Your Honors, may it please the Court. My name is Christopher R.J. Hillis and I represent the appellant in this case, Mr. Marcus Hanks. This case centers around 42 U.S.C.S. section 1983. I am respectfully requesting that this Court vacate the lower court's ruling in the Northern District of Texas and remand the case for further proceedings. There are two major issues in this case. First issue is a genuine dispute of material fact as to whether Mr. Hanks' constitutional rights were violated pursuant to 42 U.S.C.S. section 1983. Issue number two is whether Mr. Hanks presented competent evidence to rebut the qualified immunity defense presented by the appellee, Officer Randall Rogers, who produced the defense of qualified immunity. This case boils down to the issue of how a police officer, Officer Randall Rogers, approached a traffic stop of Mr. Hanks along a highway between Dallas and Fort Worth, Interstate 30. Is your best case DeVille? DeVille v. Markins Hill? Yes. Or do you have a, I mean, what's your best case that the circumstances of this escalated only because of the police officer and that he should have known that that was, that any reasonable officer would have known? I would respectfully say, Your Honor, DeVille is a very strong case on our side. On the basis that in DeVille, the individual, the appellant, sat in the vehicle, refused to get... And the officer broke the window. Yes. The officer broke the window. They pulled her out of the vehicle, slammed her against the car, and subsequently, I believe, hurt her abdomen, as well as some cuts and abrasions, and took her back to the police car. That instance, this circuit court determined that that was passive resistance on the part of the driver, Ms. DeVille, by actively, or passively, just sitting in the vehicle, rolling the window up, locking the door. And the key factor that's distinguishable in that situation, though, is in this instance, it was even more that Mr. Hanks removed himself from the vehicle. He was no longer a threat to flee, as in Ms. DeVille could be determined that she was still in the vehicle, she could have removed herself from the situation. The other case, I believe, that looks at the style of injury is the Peterson v. City of Fort Worth, which was the knee strike by the officer. This court determined that there was a genuine issue of material fact as to whether, from the perspective of a reasonable officer, the knee strike was objectively unreasonable or objectively reasonable. I also believe that, looking to other circuits, looking to the Solomon v. Auburn Hills Police Department case, that is also a strong case on the fact that there was passive resistance on the behalf of the appellant. She actually removed herself, was going to meet with the officers and discuss the situation, yet was unreasonably attacked. Is it your position here that your client passively resisted, or is it your position that he was cooperative, or was sometimes both? Your Honor, it's the position that it is, just as there's a hazy difference between the qualified immunity issues on excessive or reasonable, it's in between passive and compliance. I believe, from the very beginning, Officer Rogers viewed this as a traffic stop and not assisting a citizen in need, whenever Mr. Hanks clearly indicated to Officer Rogers that he was looking for his cell phone, from the very beginning. The frustration on Mr. Hanks' part was, he viewed this as a situation where the police come to assist, just as they are to serve and protect. Whenever it became a situation where the frustration, Officer Rogers viewed the frustration as hostility, is whenever there was maybe minor passive resistance on removing himself from the vehicle, as well as complying. I know this Court has the dash cam video, and this Court has ruled on numerous occasions that when you have dash cam video, you clearly watch it and determine whether or not there is any material effect based on the statements. Right. I wanted to ask a question about the video, since you brought it up. Can we consider, and I'm going to ask the other side this too, the fact that it appears that the officer made incorrect, and that's the best phrasing of that, statements to both the, not to both, to three different groups of people, to your client, to the EMT people and to his supervisor on the phone, that he told a recollection of the events that was not consistent with what unfolded on the video to each of those three people. Is that something that the Court can consider in this making its determination, or is that not relevant to this determination? I would believe it is relevant to the determination, Your Honors, because you're looking at the traffic stop up until the point, in fact, where the hostility continued once Mr. Hanks was in the ambulance, and then what you're referring to, Your Honor, of the phone calls to the supervisor as well as the statements to the EMTs whenever they arrive. Now, I will say that the video, it can be very difficult to hear at times. But where you can hear it, he's saying that he said certain curse words and he did certain things at certain times that are not on the video prior to that point. Yes, Your Honor. And the different things that the gentleman did that watched repeatedly and they're not there. Can I consider that he made statements after the fact, or are those irrelevant and I'm only allowed to look at the statements up to the point? I believe they're relevant because it goes to the mindset of how he approached this situation and how he viewed Mr. Hanks. The one statement that stands out to me and is clear in the dash cam video is the instance of the swear words by Mr. Hanks, which are not present, regarding what Officer Rogers tells the EMTs as well as the supervisors, as well as the statement that he has his hands in his pockets throughout the traffic stop. I believe the dash cam video is clear that he does not have it. He has them, if anything, ringed around what would be your belt loop location. And then he moved them, he argued a little bit about it, but moved them when the officer told him to move his hands. Yes, Your Honor. He moved them and he in fact presented himself for what, he was not aware of why he was being arrested or if he was being arrested, but the disputed facts I believe he also says to the EMTs as well as supervisors that Mr. Hanks did in fact actually present himself for arrest arguably twice, with his hands behind his head as well as in a movement of behind his back. The kind of custody that he was in, is it your, maybe I should ask the other side this too, is it your understanding that it's some sort of temporary custody so that the officer can write a ticket without being harmed? Or is it your understanding that he was under some sort of other detention while he was going to search the car or that sort of thing or while he was going to, or was he under arrest? I believe the statement of the other side is that he was not under arrest at any point. And that's what's unclear because we have no answers whenever Mr. Hanks asks for what the situation is of being notified that he's under arrest for the minor traffic ticket of not having insurance. Mind you, Your Honor, that he had less than a minute and ten seconds to locate that insurance. Did he get three tickets? There was... There was something about his going too slow? The driving too slow, I believe he was 20 miles under the speed limit. Right. Did that get a ticket for that too? Did he get a ticket for that? It's my understanding, yes, he did, Your Honor. Did he get a ticket about his brakes or not? I don't believe he received a ticket about his brakes. Okay, what was the other ticket? The other ticket that I'm aware of is the Class B misdemeanor out of Texas for the driving without valid insurance because he was unable to locate the insurance. Did he... Never mind, it doesn't matter at this point. Go ahead. So now I'm a little confused. Are you saying there were two citations or three? There were two citations that I am aware of, Your Honor. I was wrong. The situation of under arrest or whether he felt that he was under arrest, there was never a clear answer to whether he was under arrest. It appeared from the video, the dash cam video, you can surmise that he was potentially under arrest and was going to be booked in once he was released from the hospital, once the paramedics determined that he needed to go to the hospital. However, then the story sort of changes again to where he says that, well, he discusses with his supervisor that he's going to release him from the scene and he's released to the paramedics and is free to go. So he's never actually taken to jail. But it is unclear whether or not he was arrested because we do have a search of the vehicle, it appears on the dash cam video, at some point as he searches through the vehicle while Mr. Hanks is in cuffs in the backseat of the police cruiser. Let me ask you what you're saying. Your client's rights were out there at the scene. Did he have the right, if he thought that he was being arrested or otherwise dealt with in an unfair way, did he have the right to refuse to comply with the officer's commands? Your Honor, I believe he had the right to be made aware of why he was being arrested. And until he was made aware, he could refuse to comply with commands, to put his hands in a certain place, to turn around, whatever? I believe that what the dash cam video shows is the passive resistance. So I'm telling you what the facts are. I'm asking you what the law is. Does he have the right, if he thinks he should not get down on his knees and the officer is telling him to do so, does he have the right not to get down on his knees? In that situation, Your Honor, I believe he does not. Why don't you say the complete sentence because I'm not sure what the not applies to. He has the responsibility under the law to obey the officer's reasonable commands in the situation. You added a modifier this time, reasonable, but I will accept that maybe that's saying he should get down on his knees. Does the video show, as the officer says, that he was told to get down on his knees five times? Four times? We don't need to be too specific, but multiple times? Multiple times, and it is that Mr. Hanks, the first time, there's a dispute on whether or not he actually heard the first request or second request to actually get down on his knees, since he was already in a position of hands on the back of his head. So the excessive force of the injury to your client occurred after however many times it was, four or five, and this particular maneuver was used to force him to his knees. Do you have any, excuse me, one of the problems with that is he smashed him against the car and caused that injury. What is your best support for using a physical maneuver like that, which I guess was using his arm or his elbow in the back near the neck to force him to his knees, was excessive force? Are you referencing which case law presented? What's your best argument? If you've got a case to support it, that would help. The case that is that style of injury that doesn't involve breaking the glass or dragging someone out would be Peterson v. The City of Fort Worth, which involved a knee strike. I believe it's quite similar to this situation where there was, instead of the knee, Officer Randall Rogers used his, appears to be forearm or arm, to take him down in what is called the half spear move. I would also argue that the case of Solomon v. Auburn Hills, the Sixth Circuit case, is an instance of some sort of level of force in the same manner of trying to take someone down by their arms or their upper body whenever they are, at best, passively resisting the commands and wondering what the situation is and is trying to determine if they're under arrest and what for. I just want to be clear, you answered a series of questions from Judge Southwick, but you weren't conceding or agreeing that he ever finally refused to comply with any command given by the officer, were you? Absolutely no, Your Honor. We are no conceding that whatsoever. In fact, I think the video shows the complete opposite to where he complies with every single command throughout the situation, whether it is on the first instance or the fourth instance. He ends up complying with every single— But there were five or six commands or orders given, a series of commands or orders. On certain situations, yes, there was a series. What about your driver's license? Did he ask about a driver's license? Yes, the driver's license was immediately produced. All right. And then he asked about getting an insurance, proof of insurance. Yes, Your Honor. And he began a search for that. Yes, Your Honor, he began a search at that moment. Which was interrupted when the officer commanded that he get out of the car. Yes, correct, Your Honor. And he did that? Yes, Your Honor, he did do that. All right. And there were other commands? There were other commands that he was ordered to go stand in a certain location, he immediately— And he did that? Yes, Your Honor. And when he had his hands on his pockets, he was ordered to take his hands out of his pockets? Yes, Your Honor, and he did that. And he did that? Yes, Your Honor. And when he was ordered to stand in a certain place, he did that? Yes, Your Honor, and if you mean stand in a certain place by stand— All right. So I'm just trying to—I just want to be clear that there isn't any agreement that there was any refusal ultimately to comply with any command that was given by this officer. The last command was to get on your knees, and for all I know, one more statement or command from the officer to get on your knees might have been enough to have him get on his knees, except he got the spear before that happened. Absolutely correct, Your Honor. There is no point in this instance that I am arguing that he outright refused to do any action. It comes down to the fact of excessive unreasonable force through the negotiation or request to Mr. Hanks were working. They were being successful at what Officer Rogers wanted to do, which was eventually detain him. However, and I think you said it best yourself, Your Honor, that— Thank you. One more question. One more question. Sorry, Your Honor. And whatever rights he may have had in terms of questions and all of that, do you agree or not that it's not unreasonable to ask whether or not I'm under arrest? I believe it is totally reasonable and under the law to ask why he is being arrested and what he is being arrested for, especially in this situation, whenever Mr. Hanks views this situation as the officer here to help him locate his phone. He has done nothing wrong. He was not under the influence of alcohol, drugs, no weapons found in the vehicle, no physical or threatening manner, and that that attitude, if there was, of frustration, was viewed by Officer Rogers as hostility, which led to the aspect of an arrest that Mr. Hanks should have been or had the right to know why he was being arrested. And it was a simple question that he asked during the process of the incident. And, Your Honor, with that, I'll reserve the rest of my time for rebuttal unless there are further questions in my opening. Thank you. Thank you. Thank you. Yes. May it please the Court, my name is David Craft, and I represent Officer Randall Rogers in this case, an excessive force case that's been filed by Mr. Marcus Hanks. And if the Court will indulge me, I may try to answer a few of the questions that were posed during opposing counsel's argument. First of all, as to the issue of potentially inconsistent statements by my client, we don't believe that it's a material fact issue as to whether or not he made inconsistent statements. First of all, the ---- Okay. You're not saying he didn't make inconsistent statements. I'm not saying he did because it's very difficult with the road noise. You can see that Mr. Hanks is very frustrated in the car. His head is moving around. He's talking almost with his hands. And it's very difficult to hear. Now, one thing that's interesting in this case is that, Officer Rogers, this appears to be a normal traffic stop. And then he's talking with him. He can't find his insurance. And Officer Rogers starts walking back to his car, and then he just turns around. It's very odd. It is. Something clicked in the officer's mind. But I don't know that that's all that important for this analysis, because what we believe that the court should focus on is the objective reasonableness of the officer's actions. Is it objectively reasonable for an officer to make someone who's standing at the back of their car with their hands up to get on their knees? Is that objective when they're complied in a series of ---- in a series of things that Judge Graves and opposing counsel discussed? Is it objectively reasonable to make that person get on their knees? Can I ---- can the officer make me get on my knees at the traffic stop when he's giving me a ticket every single ---- is that any time? Is that the rule? I'm asking seriously what is the law in this area? I don't know if it's every single time, Your Honor. But if the officer objectively believes that there's some type of threat being posed by a suspect, then I think he can. And when Mr. ---- The officer objectively believed the suspect was posing a threat when the person is standing at the back of the car with his hands up like this. How could the officer objectively believe that the gentleman was a threat? Why couldn't he just do the ticket right then? Because he feared that Mr. Hanks had some type of a weapon in his pocket. And we have to examine, of course, the totality of the circumstances. Do you know that from something? Did he say that at some point? He does. He says it in his affidavit. Okay. Officer Rogers says it in his affidavit. But one of the things that's interesting is as soon as Mr. Hanks gets out of the car, the first thing he does is he pushes up his sleeves. Now, in Officer ---- I mean, in Mr. Hanks' affidavit, he talks about how it was a chilly night. That's why he only rolled his window down a few inches when he's talking to Officer Rogers. So I'm not sure why he pulled up his sleeves, but it doesn't matter. We have to look at this from the perspective of a reasonable officer. And to a lot of people, that looks like maybe someone is wanting to fight. The next thing that Mr. Hanks does is he sticks his right hand into his front pocket. And that would give any officer, I think, a reasonable officer, concern that maybe there's some type of weapon in that pocket. Now, he does ask him to remove his hands. If the video doesn't show that, then do we credit that statement? If the video did not show something, then I think that we could look to the facts in the light most favorable to the plaintiff. But in this case, I believe that as soon as he rolls up his sleeves, you can see him put his hand into his right pocket, which is the side facing the camera. So I think it's ---- So you roll up your sleeves to fight, except you got a gun? So we got a gun fight or a fist fight? Which one am I preparing for when I roll up my sleeves? I think as an officer, you're preparing for anything. And then the next thing is that he asks him to remove his hands from his pocket, and Mr. Hanks does remove his hand from his pocket. But then he goes right back and he hooks his thumbs in the pocket. Now, if someone is trying to draw a weapon, whether it's a knife or a gun, having the hands around the waist is dangerous to an officer. The safest thing would be to have the hands up at his head. Well, then he does have his hands up. He does. Why isn't the officer safe at that point? Because of the totality of the circumstances and the way that he keeps reaching and keeping his hands around his waistband. He's not doing anything. He's got them up at the top. Right, but that's only for a brief second, and then I think it's two seconds, and then he's ordered to get to his knees, and at that point he comes back. So a solution for a suspicion that there's a gun in his pocket is to put him on his knees? I believe so, Your Honor. He doesn't know. Is a gun any less accessible to him if he's on his knees? I think that the danger is much less if a suspect is on their knees and has their hands on their head, and that was what was asked of Mr. Hanks, because hands on the head means that it's farther from drawing anything, any type of weapon, out of pants or waistband. And being on the knees, you don't have to worry about a roundhouse kick. You don't have to worry about a punch would be much less because there's no leg drive. You also, you know, the chances of him fleeing aren't great if he's on his knees. And there's one thing that I think that's really important, and I don't know if the Court has noticed it because it's very subtle, and it occurs in probably one or two thirtieths of a second. The video is shot in 30 frames per second. And right around the 20, 41, 13 mark of the video, as Mr. Hanks is standing up against the car, he has already removed his hands from his head and put them back at his waistband. Officer Rogers has asked him to go to his knees four or five times. Mr. Hanks makes a step with his left foot. It's very subtle, but I used a very low-budget method to test this, and I just put a sticky mark, a sticky note, the corner of a sticky note on the little white reflector on the back of Mr. Hanks' left shoe. And if you pause the video and go through it, you can see that he makes a step to his left. Where is this on the video? It's right there at the 20, 41, 13 mark. And you can actually see Mr. Hanks almost continues with that step. It turns out that the step is nothing. It doesn't appear that he was coming around with a roundhouse kick or coming around with a punch. But at that very second or split second is when Officer Rogers comes forward and puts the forearm onto the upper torso. And I know there's been some, I think it's just argument that he used his elbow, but I think in the video you can see the elbow was out. And so what Officer Rogers does is he pushes him down onto the car. What difference does it make if it's an elbow or a fist push to the car? I mean, I'm sorry I don't know the technique. When we're examining the reasonableness of the officer's actions, I think that the officer should try to use the least amount of force necessary to gain control of the situation. And so I think potentially an elbow could hurt more than a forearm. If that's the premise, then could a person view this and see that it seemed that the officer was escalating this at every step, like in the news in the Sandra Bland case? Why is this not that kind of case where the officer is actually escalating the dispute rather than diffusing the dispute? Could a reasonable person watch this video and see that that way? Well, I think that the Sandra Bland case, what little I know of it, there didn't appear to be a threat really to the officer's safety. I think she was smoking a cigarette, and he wanted the cigarette put out, and he escalated. I think we have to be really careful in the safety of these beautiful chambers. And police officers have a very difficult time. I'm not trying to minimize that. But I'm asking could a person see this as the officer escalating the situation rather than diffusing or protecting the situation? I think a person could see it that way. But I think that under the test of qualified immunity, I think that the burden on Mr. Hanks is to show that no reasonable officer could have done what Officer Rogers did. I think officer safety really is important, particularly. I guess I want to go back in connection with that. I want to go back to his order that Mr. Hanks get out of the car. What was the basis for that? What was the reasoning behind that? Because what we have at this point is a traffic stop where he was going 20 miles under the speed limit. His explanation is I placed my cell phone on the car. I heard it fall off. He drives back. He's looking for his cell phone, which seems plausible. And there's no indication the officer believed anything to the contrary. So that's the reason he was driving slow. So I got him for driving slow. And now he can't find any proof of insurance. So I got two violations. Was he ultimately just given two citations? I believe it was just two citations. So we already have both those before he ever gets out of the car. We've got two violations, and ultimately that's all we ended up with. Why their order to get out of the car? Again, I think this goes down to officer discretion. If there's anything that an officer sees or considers dangerous, a car is a more dangerous place actually to have a suspect in because there's many places that someone could hide a gun. And Mr. Hanks is very animated. I don't know if he's frustrated, angry. Well, he lost his cell phone. I get animated when I lose my cell phone. Okay. And so he's very animated. And Officer Rogers? He's being treated racially discriminatorily. He thinks that at the time as it's unfolding because he says that to the officer in the car and says, you did this to me because of that. So that could also be a basis for the person to get. I'm not saying he was being treated racially. Please don't misunderstand the question. Right. Is that also a basis why he could have been animated? It is a basis. But, again, we're talking about officer safety, and we have many places that a gun could be concealed. Once a suspect is removed from the car, you really have areas that are hidden such as waistband areas and pockets tend to be the most dangerous places where suspects might hold a gun or have a weapon. So in a car, it is dangerous. Why wasn't he in the car at one point? I think that an officer... Are you talking about with the flashlight when he's... He's not in the car. After the person is in the... He's in the back of the squad car in handcuffs, and the officer goes and starts rummaging through the car. There was at one point where he's looking for some medicine, perhaps, for blood pressure or something, but otherwise he's also rummaging at another time. I'm wondering, are you allowed to just go rummage through people's cars when they're in the... Or maybe that's irrelevant to this case. I don't know that it affects the use of force, which that's the only thing we're here on is excessive force. We're not on a false arrest or improper search case. That's not what they pled. But I think that an officer can do that, particularly if he's looking for medicine for a suspect. Or, you know, there also is a search incident to an arrest. But he wasn't being arrested, and that's your client's business. You know, it's very difficult. I don't think that the officer made the decision out there from a legal standpoint. I don't think he has time to say, this is a Terry stop or this is an arrest. He perceived what he saw was a threat and he acted. I think he had a legitimate... For the misdemeanors, for the traffic citations. For those two traffic things? I believe so, but certainly... Really? I believe so. How do you know that? And I also believe that he had the authority to arrest him for interference with a police officer under Section 3815 of the Penal Code or refusing to comply with a police officer's lawful order under Section 542.501 of the Texas Transportation Code. So there was reasons to arrest. I don't know that Officer Rogers ever got there. I mean, he says that he perceived a threat. I believe that a reasonable officer could see that there was a threat and, you know, he acted. And then we had the situation with Mr. Hanks needing medical treatment and he took care of that. You know, the key, I think, in this case is not only that we're looking at officer safety, but the injuries here are not severe. Many of the cases where this court denies qualified immunity, we have broken arms, dislocated elbows. The DeVille case that they cite, she required multiple surgeries also in that DeVille case. The suspect there did not pose a threat. I don't think there was a video, and so the factual disputes were alive and well, whereas in this case, I think the video pretty much tells it all. Are you familiar with a recent case that's an unpublished case out of our court in August called Bone v. Dunaway? I am, Your Honor. In that case, it says, although Bone's allegation of injury could be characterized as de minimis, bruising in a swollen cheek, whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury. And then it cites a case called Freeman and a case called Williams v. Bramer and says what constitutes an injury in an excessive force claim is therefore subjective. It is defined entirely by the context in which the injury arises, and then cites a case called Brown v. Lynch that says any force found to be objectively and reasonably necessary exceeds the de minimis threshold. And then it says there's a fact question about the degree of injury. I'm just reading verbatim from the opinion. It is an unpublished case, but it's a very recent case, and you said you're familiar with it. Yes, Your Honor. Would that run contrary to what the point you're making right now? Well, Your Honor, first of all, in the Bush case, that was a case very much unlike this one. Apparently, the suspect was slammed, her face was slammed into a vehicle after, after, the key is, after she was arrested, handcuffed and compliant. This force in this case was not gratuitous whatsoever. I mean, there was no get them in handcuffs and kick them in the head or, like in the Bush case, slam them into the car. Bone case, you mean? In the bone case, yeah, yeah, the bone case. Now, as far as the de minimis, you know, this Court has talked about different situations such as Fan Steel v. City of Marion, if I pronounced that correctly, and it held that claims of neck strain from a chokehold, scratches, marks left on wrists by handcuffs, and rough treatment causing elevated blood pressure did not amount to injuries sufficient to support claims of constitutional force, use of force. Also, in the recent unpublished opinion of Brooks v. City of West Point, Mississippi, this Court has said that abrasions to the hands and knees, some neck and back pain, and unspecified problems with the suspect's asthma were held to be de minimis. Also, this Court, in the Lee v. Wilson case, has stated that a busted lip was a de minimis injury, and that's what we have here. You're saying the other case says if it's any more than necessary, it's not de minimis, and that's a fact issue, and then these other cases... Well, we say that the force was objectively reasonable, and so in this case, with that step, with that movement, looking at the totality of the circumstances and the threat that a reasonable officer could perceive, that the injury was the lowest level of force that Officer Rogers could use to get to the point. But you mentioned totality of the circumstances, and in all these cases we're talking about, that's the requirement, isn't it, that you look at the totality of the circumstances? You do. So they're all very much fact-driven, what was happening in the moment in that particular case. Yes, Your Honor. All right. Yes, Your Honor. And we also... Well, let me ask before you leave this, did the Officer Rogers ever say that he saw this foot movement and that's why he rushed Hanks? I don't believe he says that in his affidavit. Didn't he have many chances to say that's what caused him, since that's the excessive force? I find that a bit... I mean, a good lawyer looks for what you can, but since that's never been something he focused on, it seems to me he should have been. I'm sorry, Your Honor. He says that, you know, he repeatedly mentions aggressive body posturing, posing a threat, and, you know, trying in an attempt to gain control of this potentially dangerous situation, I made contact with the upper part of Hanks' back with my left forearm. So that's from Officer Rogers' affidavit. And I think it's difficult, too. I mean, looking back on something, it's difficult to exactly perceive exactly why you did something. These are tense and uncertain circumstances, and he reacted, and that's what happened. I mean, it just doesn't seem to me to be too much to ask of an officer for the officer to consider what amount of force needs to be used under the circumstances. He's a trained police officer, and you're saying looking back it's difficult to say why you did something. Well, and I mean... That's exactly what ought to be happening in the moment. This is what I need to do based on these circumstances. Right, but I think he reacted, and we have an expert, and the expert provided testimony that this was reasonable, and he went through how this is very low on the use of force continuum. And so the decision that was made was very good, but officers do have to make split-second decisions, and I think that this was one of those. I understand that. It just seems to me that all of the exigency of these circumstances were created by the officer's conduct. He had a guy on a traffic stop who's looking for insurance in the glove compartment, and he decides to abort that search and have him get out of the car because now you tell me his fear was that he may get to a weapon in the car. Well, Your Honor... And I understand that's not a question, so you may proceed. Okay. My time is up. I just wanted to just do one last quote, Your Honor. I just wanted to take this court back to the concurring opinion in the recent case of Pratt v. Harris County. Judge Costa states, My colleagues' differing opinions on whether the force applied in this tragic case was excessive demonstrate that the constitutional question is a close call even for a judge who can spend days parsing the fine points of case law, let alone for an officer making split-second decisions in the field. It is precisely for such situations, when the existence of a constitutional violation is not beyond debate, that qualified immunity provides a defense. We therefore submit to you that Officer Rogers is entitled to qualified immunity, and we therefore ask the court to affirm the district court's judgment. Counsel, following up on Judge Costa's eloquent words, why is this not a case where even if we were to find a constitutional violation, we would nonetheless find on the other prong that an officer wouldn't know necessarily, that every reasonable officer would know that this was a violation? Even if we were to go ahead and find prong one and say there's a violation, why isn't this the case that's in the gray area that the officer wouldn't be on notice? Your Honor, I would present to the court that Officer Rogers was aware of, and if he wasn't, should have known. He had a prior incident of excessive force in the eyes of the Grand Prairie Police Department roughly seven months prior to this incident with Mr. Hanks. As a result of that incident, seven months prior to Mr. Hanks' incident, he went through retraining on issues of force and use of force. We are now fast forward to the time in February 2013 with Mr. Hanks, and it appears that he had not learned the lesson or heeded what the Grand Prairie Police Department states in their reasoning for suspending him, is that he used objective and unreasonable force, or excessive and objectively unreasonable force in the takedown of Mr. Hanks in light of his prior training and retraining. Is that in the record that he got suspended again? Yes, Your Honor, it is in the record. That's okay. I believe it is in the record between 350, record on appeal between roughly 340 to 400 is the Grand Prairie Police Department findings. Your Honor, I'd like to address the situation of the topic of de minimis injury. This Court has found on other occasions as well that injuries such as the busted lip, the injuries to the nose, the bruised ribs, as well as the aggravation of high blood pressure, it is not a de minimis injury. This Court in Gomez v. Chandler stated that they reversed the dismissal of the plaintiff's excessive force claim because it became a fact issue. Now, in that situation, the plaintiff's injuries included bruising and swelling, which this Court said were minor, but they were not de minimis enough to warrant summary dismissal. And that comes to the issue of there is genuine fact issues throughout this, throughout the video, throughout the statements. The statements of any fear that Officer Rogers sensed in the movement of a heel, I don't believe should be considered because that is nowhere in the record on appeal and has never been made by Officer Randall Rogers as a reasoning for why this force was used. And it is important to go back to the situation of the escalation of the situation by Officer Rogers. This was a minor traffic tickets that were settled for $415. It escalated from a situation of not finding insurance to being removed from a vehicle and then struck with an elbow spear. Whether or not it had to do with the fact that Mr. Hanks is an African American or whether or not it had to do with Officer Rogers, we don't know. But the frustration sensed in the car as you listen to the dash cam video again is that in the moment Mr. Hanks senses that this is Officer Rogers is overreacting for whatever reason due to his size or what have you not. But the facts show that there is no threatening movements made by Mr. Hanks throughout the dash cam video, which is certainly in the record. And furthermore, in Eichert v. Blair, this court has said that the amount of injury required to prevail in the excessive force action depends on the context in which the injury occurs. Again, going back to whether or not it is a de minimis injury or not, and it centers around a fact issue that at this summary judgment at the district court level must be viewed in favor of the non-movement here, Mr. Hanks. The issues in this case and what it centers around is that we have a circumstance of where it is a minor offense that he is pulled over for. He does not attempt to flee. He does not actively resist. In fact, through negotiation he is doing everything that is requested of him by the officer. And the force was used excessively and unreasonably without any need whatsoever. And if there are no further questions? I have one, and it may not be worth asking. But if the case were to go back to the district court and there was a trial, would the findings of the Grand Prairie Police Department that he acted unreasonably under these circumstances, would those findings be admissible in that trial on the issue of the officer's conduct in this case? Your Honor, I would argue that they would be admissible because of the cases from this court on experts' opinion. They have an expert in Mr. Quinn that has said that it was not. However, in the eyes of the chief of police of the city of Grand Prairie, Texas, it was objectively unreasonable and therefore, in our opinion, would be admissible in the district court to, for lack of a better word, counteract. Could you rebut his expert that he has that says it was not excessive with your report that says the police department chief said it was excessive? Or else you have your expert augment with that report. That's what you're saying, right? Yes, Your Honor. Absolutely, Your Honor. You may. It's unorthodox, but you don't have objection to him give us his case, do you? You're not allowed to argue it. Just give us the citation. Your Honor, you mean the Pratt v. Harris County case? Pratt v. Harris County. Thank you. We will check. The hog tying case. All right. Thank you very much. Thank you very much, Your Honor. Thank you. We have your argument. We appreciate the professionalism of both counsel today. Thank you. Thank you, Your Honor. We're going to take a brief recess. Thank you.